LEON CERF, Doing Business as PRIME LUX MANUFACTURING Co., Plaintiff, *v.* LA MAISON DU PAYSON DU SUD-OUEST, Defendant.

Supreme Court, Special Term, New York County, February 11, 1952.

*Mitchell M. Bailey* for plaintiff.

*Frank O. Fredericks* for defendant.

HOFSTADTER, J. The plaintiff moves in this action to modify and the defendant cross-moves to confirm an arbitration award made after this court had stayed the action pending arbitration.

In June, 1950, the plaintiff, doing business in New York, entered into three written contracts with the defendant, a French corporation, for ·the shipment and sale by the latter of an aggregate of forty metric tons of crimson clover seed of stated specifications "guaranteed to pass the Federal Seed Law." The plaintiff was to open an irrevocable letter of credit and payment was to be made for the goods "only after passing the Federal Seed Law." Each of the three contracts provided in substantially, though not exactly, the same language for "arbitration in London as per rules of American Seed Trade Association (Edition 1948)."

The defendant shipped the entire forty tons in a single lot. Of this shipment, twenty tons passed the Federal inspection and were paid for through the letter of credit. The remaining twenty tons, however, failed to pass inspection and were refused admission into the United States, because of their low germinating capacity, as evidenced by samples tested in New York by the Federal authorities.

The plaintiff buyer thereupon instituted this action, demanding damages not alone for the nondelivery of the rejected twenty tons but also for breach of warranty in the delivery of the twenty tons accepted. In the action the plaintiff obtained a warrant of attachment pursuant to which a levy was made on the negotiable warehouse receipt which meanwhile had been issued by the bonded warehouse in which the rejected lot had been stored. The defendant moved to vacate the attachment or in the alternative to stay proceedings in the action pending arbitration. The court denied the motion to vacate the attachment but granted the stay. (*Cerf* v. *La Maison du Payson du Sud-Ouest,* N. Y. L. J., April 26, 1951, p. 1523, col. 5, BENVENGA, J.) and in the order on its decision directed the plaintiff to join with the defendant in arbitrating the differences arising under the contracts sued on.

An arbitration in London followed, resulting in the award which is now before the court. The arbitrators found that the twenty tons delivered did not meet the contract requirements as to germination and that the plaintiff was entitled to an allow-

ance on account of the purchase price paid. The arbitrators also found for the plaintiff on the claim for nondelivery. For these two items they awarded the plaintiff a total of $1,906.52 and neither party questions this portion of the award.

The arbitrators further directed that the defendant seller bear all charges incurred in New York in respect of the twenty tons rejected from the date of their arrival in New York up to November 30, 1950, and that all charges incurred after November 30, 1950, be borne by the plaintiff buyer. Upon the rejection of these twenty tons and about a month earlier than November 30, 1950, the defendant had given instructions that the goods be shipped back. Presumably the imposition of the charges after November 30, 1950, against the plaintiff was based on the ground that the plaintiff's attachment was responsible for the goods not being sent back. The plaintiff complains of this direction in the award.

The arbitrators further found that the plaintiff's affidavit in support of the attachment incorrectly stated that the arbitration clause of the contract provided for arbitration *by* the American Seed Trade Association, when in fact it merely required arbitration in London *"as per rules"* of the Association. Accordingly the arbitrators directed that insofar as the cost of the "legal proceedings" instituted by the plaintiff were within their jurisdiction the plaintiff "bear and pay both their own costs and the costs of the Sellers of such proceedings to be taxed or otherwise settled in accordance with the Rules of the Supreme Court of the State of New York." The plaintiff also challenges this provision of the award.

The plaintiff now moves to modify the award by eliminating the direction for the payment by the plaintiff of the charges on the goods after November 30, 1950, and of the costs of the legal proceedings and to confirm the award as so modified. The defendant counters with a motion not alone to confirm the award as made but for a hearing to determine the reasonable fee of its attorneys as part of the costs awarded to it.

If these charges and costs were embraced within the controversy required by the contracts to be arbitrated, then, of course, the determination of the arbitrators must be given effect, whether their conclusion commends itself to the court or not. If, on the other hand, these items were foreign to that controversy, they were beyond the competence of the arbitrators who were without power to pass on them. Apparently the arbitrators themselves entertained misgivings on this score, at least as to the legal costs.

In my opinion, the arbitrators exceeded their powers when they dealt with these two items. The defendant urges that an asserted breach of the arbitration clause is itself an arbitrable controversy. No authority is cited in support of the contention. It is not necessary to decide that such a breach may never properly be the subject of arbitration. It is sufficient to hold that under the arbitration clause before the court, the arbitrators had no jurisdiction to make an award predicated on the absence of right in the plaintiff to secure the attachment or to assess damages against the plaintiff for having secured it.

This court denied the motion to vacate the attachment on the authority of *American Reserve Ins. Co.* v. *China Ins. Co.* (297 N. Y. 322). In the cited case the plaintiff obtained a warrant of attachment for breach of a treaty of reinsurance containing an arbitration clause, which made an arbitration award "a condition precedent to any right of action in respect of any claim." On an appeal from the denial of the defendant's motion to vacate the warrant, the court unanimously answered in the negative the certified question·whether, in view of the arbitration provision and the absence of an award, the warrant of attachment should be vacated. In its opinion the Court of Appeals said (p. 326): " We think that the stay provided for in this section is the *exclusive* remedy for a person against whom an action has been brought in violation of an agreement to arbitrate. The Legislature has provided a means of enforcing that which was previously unenforcible; the defendant in such an action must use these means or none at all." (*Italics in original.*) Though strictly this language is confined to the remedy available to the defendant in the action itself, brought in violation of the agreement to arbitrate, its reasoning should apply equally when redress for the breach of the agreement to arbitrate is sought elsewhere. The right to the attachment upheld in *American Reserve·Ins. Co.* v. *China Ins. Co., supra*) would become illusory if the party obtaining it thereby subjected himself to independent liability for damages, which, as here, could be asserted against him in the arbitration. Of course, if the arbitration clause expressly or by necessary implication includes such a claim in the arbitrable controversy, an award based on it might well be sustained. The arbitration clause here, however, is free of any expression indicative of a purpose to give it such comprehensive scope. In the circumstances, it must be held that.in assuming to pass on the matter the arbitrators exceeded their jurisdiction.

Though at first blush the charges on the twenty tons not admitted by the authorities might appear to differ from the

costs of the legal proceedings, study of the papers leads to the conclusion that in reality those charges, too, were assessed against the plaintiff only because of the attachment. Once the right to secure the attachment is recognized, the defendant must be relegated to the procedure afforded by the Civil Practice Act for the discharge of the goods from the levy. If it elected not to avail itself of this procedure, it is as much to blame as the plaintiff for the resultant delay in the release of the goods. In this view, it becomes clear that the fastening of responsibility for these charges on the plaintiff rests entirely on the ground that he wrongfully secured the attachment. The award of these charges stands on no better footing than that of the legal costs. Neither was a proper subject of arbitration.

Accordingly the plaintiff's motion to modify the award as to these two items and to confirm it as modified is granted and the defendant's cross motion is denied. Settle order.